JACOB ALTSHULER AND WILLIAM ALTSHULER, PLAIN-
TIFFS-APPELLANTS, v. NEW BRUNSWICK FIRE IN-
SURANCE COMPANY OF NEW BRUNSWICK, NATIONAL
FIRE AND MARINE INSURANCE COMPANY OF ELIZA-
BETH, MASSACHUSETTS FIRE AND MARINE INSUR-
ANCE COMPANY OF BOSTON, THE EMPLOYERS FIRE
INSURANCE COMPANY OF BOSTON, THE GIRARD
FIRE AND MARINE INSURANCE COMPANY OF PHILA-
DELPHIA, DEFENDANTS-RESPONDENTS.

Argued October 18, 1934—Decided January 15, 1935.

For the plaintiffs-appellants, *Joseph Thomas Lieblich.*

For the defendant-respondent Girard Fire and Marine Insurance Company, *Lum, Tamblyn & Fairlie.*

For the other defendants-respondents, *Arthur T. Vanderbilt.*

The opinion of the court was delivered by

WELLS, J.   This is an appeal from a judgment of the Supreme Court (Passaic Circuit) entered on the verdict of a jury directed by the trial court in favor of the defendants.

The pertinent facts are that David Gordon was the owner of two tracts of land and premises in Paterson, New Jersey, upon which there were numerous mortgages. The plaintiffs, Altshulers, were the holders of a mortgage which was a third mortgage on one of the tracts and a second on the other. On June 20th, 1929, after the death of David Gordon, the first mortgagee, the Hamilton Trust Company, began foreclosure

proceedings, but by an arrangement made between the Hamilton Trust Company and the plaintiffs these proceedings were discontinued and on July 19th, 1929, foreclosure proceedings were instituted by the plaintiffs. On January 7th, 1930, a final decree was entered therein and the following day a *fieri facias* was issued to the sheriff of Passaic county directing him to sell the mortgaged premises.

Shortly prior to the sheriff's sale, which took place February 14th, 1930, the plaintiffs and one Rafelson, who was financially interested in a materialman's lien which had stood after the plaintiffs' mortgage, entered into an agreement whereby the plaintiffs were to permit Rafelson to purchase the property at the sale for a nominal bid of $1,000. In return Rafelson was to pay the plaintiffs the amount of their deficiency. This agreement was carried out on the date of the sheriff's sale. None of these agreements and proceedings were known to the defendants.

The mortgagees, including the plaintiffs, had rights under several insurance policies in the defendant companies which Gordon, as owner, and after his death, his wife, had taken out, some being issued before the institution of plaintiff's foreclosure suit and some subsequently. The Gordons were not only the owners of the mortgaged premises but also agents for the defendant insurance companies.

To each of the policies was attached the standard mortgagee clause in the form prescribed by the legislature, providing that the loss or damage, if any, should be payable to the mortgagees (naming them in the order of the priority of their respective mortgages), and specifying among other things, "that this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings, nor by any change in the title or ownership of the property," &c.

On January 13th, 1930, less than a week after the entry of the final decree in the foreclosure suit, a fire occurred resulting in damages amounting to $6,800, to recover which the plaintiffs brought this suit.

The first knowledge that defendants had of the foreclosure suit was after the properties had been sold by the sheriff to Rafelson. This knowledge came to the defendants by reason of the fact that Bessie Gordon, as agent for the defendants, had attached to and made a part of each of the policies an endorsement dated February 14th, 1930, to the following effect:

"The interest of this policy is now vested in the names of Rafel Rafelson, purchaser under sheriff sale Feb. 14, 1930, by virtue of foreclosure proceedings instituted by Jacob and William Altshuler against Bessie Gordon individually and as administratrix of the estate of David Gordon, deceased, et al., and Bessie L. Gordon, [widow] individually and as administratrix of the estate of David Gordon, deceased, Raphael Gordon, Estelle Gordon, Gerson Gordon, and Rosalyn Gordon, sole heirs-at-law of David Gordon, deceased, as owners, as their interest may appear, and not as heretofore.

"The mortgage interest of Jacob and William Altshuler having been fully paid and satisfied, their interest herein is terminated. Other mortgagees as heretofore. Mtgee. clause attached."

The plaintiffs never at any time made any claim upon defendants by reason of the fire until the institution of this suit, just one day prior to the expiration of the one-year limitation clause contained in the policies. At the trial, which began February 21st, 1933, the plaintiffs (who had sued as mortgagees) for the first time, claimed they were suing as assignors for the benefit of the assignee Rafelson and offered in evidence a written assignment dated February 17th, 1933, of their rights in the policies, which they claimed was pursuant to an oral assignment made at or about the time of the sale of the properties—about three years before.

The Gordons, the owners, never brought a suit on the policies nor even filed a proof of loss, and at the time the answer was filed, more than one year after the fire, the claim of the Gordons was barred by the terms of the policy and there was no liability on the part of the defendants to them.

Motions were made by defendants for a nonsuit and for a

direction of a verdict in favor of the defendants. These motions were based upon several grounds, but the trial court held that one ground was dispositive of the entire matter, namely that by the agreement between the plaintiffs and Rafelson the defendants' rights of subrogation under the policies were impaired.

With this conclusion we are in accord.

The standard mortgagee clause attached to each policy provided that:

"Whenever this company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may at its option, pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of * * * claim."

All the policies contained a provision that unless otherwise provided by agreement endorsed thereon or added thereto they shall be void if, with the knowledge of the insured, foreclosure proceedings be commenced or notice given of sale of any property covered thereby by virtue of any mortgage or trust deed.

The policies by reason of the foreclosure proceedings had become invalid as to the mortgagor and the owners of the properties (*Hanson* v. *National Liberty Fire Insurance Co.,* 100 *N. J. L.* 215; *Del Guidici* v. *Importers and Exporters Insurance Co.,* 98 *Id.* 435), but still were binding in favor of the plaintiffs as mortgagees. *Reed* v. *Firemen's Insurance Co.* 81 *Id.* 523.

The condition contemplated in the mortgagee clause of the policies had arisen. The defendants were liable to the plaintiffs as mortgagees for a sum for which no liability existed·as

to the mortgagor or owners. In this posture of affairs the plaintiffs then by their voluntary act completed a foreclosure of their mortgage and thus rendered themselves unable to comply with the stipulations for subrogation contained in the insurance policies. As was said by the Supreme Judicial Court of Massachusetts in *Canton Co-Operative Bank* v. *American Central Insurance Co., 219 Mass.* 132; 106 *N. E. Rep.* 635 (a case on all fours with the instant case), the effect of this act was to take away the plaintiffs' right of action upon the policies, unless the defendants had lost their right to set up this defense, either by a waiver thereof or their failure to exercise within a reasonable time their right of election by paying or tendering to the plaintiffs the loss or damage caused by the fire, and claim to the extent of such payment the right of subrogation vouchsafed to defendants under the policies.

Generally speaking, an insurance company's right to require subrogation or an assignment of the mortgage depending upon its election would accrue only upon its payment or tender and demand of subrogation or of an assignment. And it must make its election within a reasonable time or its right will be lost.

The plaintiffs contend that the defendants failed to avail themselves of their rights within a reasonable time after the fire.

Reasonable time must be construed with reference to the time when the defendants had knowledge of the material facts. Under the policies the loss was not payable until sixty days after notice and proof of loss had been received by the defendants, so any time within, or shortly after, that sixty days' period, would, under ordinary circumstances be regarded as reasonable time in which the defendant insurance companies might make tender to the mortgagees in order to take advantage of the contract right of subrogation.

Had such tender been made in the instant case it would have been futile because the plaintiffs had divested themselves of all their rights in the security within thirty-one days after the fire and their equity of redemption in the prem-

ises had been foreclosed before the defendants had any knowledge whatever of the situation. After the foreclosure it would be merely a vain ceremony for the defendants to have made a tender and demanded subrogation. The mortgage was no longer in existence. By the endorsements on the policies, *supra,* made by their agent Gordon, the defendants were not only notified for the first time of the sheriff's sale of the properties to Rafelson, but at the same time they were notified that the plaintiffs' mortgage had been fully paid and satisfied and their interest in the policies terminated.

Plaintiffs urge, however, that since one of the owners of the premises was the agent of the defendants, they were thereby charged with her knowledge concerning the foreclosure and sale. The general rule is that unless the principal, if acting for himself, would have received notice of the facts of which the agent acquired knowledge from sources outside the scope of his agency, the principal will not be charged with the agent's knowledge. *Vulcan Detinning Co.* v. *American Can Co.,* 72 *N. J. Eq.* 387; *Borough of Deal* v. *Sieling,* 102 *N. J. L.* 585.

When the facts in this case are tested by this rule, it is apparent that the defendants cannot be charged with knowledge of the foreclosure proceedings or sale.

Under these circumstances the doctrine of imputed knowledge has no application to this case.

We, therefore, fail to find in the record any evidence that the defendants had lost their right to avail themselves of this defense by any unreasonable delay on their part.

For like reasons they had not *waived* their rights. Knowledge is essential to waiver. Nor is there any element of estoppel against the defendants.

The rule freeing the mortgagee from the consequences of acts of the assured of which he is ignorant has not been extended to include cases where the mortgagee knows of the mortgagors' acts and participates therein, or where he himself has been guilty of an act which violates the provisions of the policy. *Fidelity-Phenix Fire Insurance Co.* v. *Garrisson,* 6 *Pac. Rep.* (2d) 47; *American Central Insurance*

*Co.* v. *Cowan* (*Texas,* 1896), 34 *S. W. Rep.* 460; *Genesee Falls Perm. Savings and Loan Association* v. *United States Fire Insurance Co.,* 16 *App. Div.* 587; 44 *N. Y. Supp.* 979.

The mortgage clause protects the mortgagee against the acts or neglect of the owner or mortgagor, and not against the mortgagee's own neglect or wrongdoing.

We do not think that the decision of this court in *Reed* v. *Firemen's Insurance Co., supra,* so strongly relied upon by the plaintiffs in support of their argument for a reversal, is in conflict with the views herein expressed. Defendants cite the same case and concede the rule, therein enunciated, that a mortgagee under a standard mortgagee clause is protected against acts or neglects of the assured of which he has no knowledge and in which he does not participate, to be sound.

Nowhere in that opinion is it stated or inferred that the mortgagee is protected from the consequences of his own act.

We have examined the other points discussed on the brief of the plaintiffs and find no merit in any of them.

We are of the opinion that the trial court properly directed a verdict for the defendants.

The judgment will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PAR-KER, LLOYD, BODINE, DONGES, HEHER, PERSKIE, KAYS, HET-FIELD, DEAR, WELLS, JJ. 12.

*For reversal*—None.